# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY BOS,<br><br>    Appellant,<br><br>    v.<br><br>THE BOARD OF TRUSTEES OF THE CARPENTERS HEALTH AND WELFARE TRUST FUND FOR CALIFORNIA, et al.,<br><br>    Appellees. | No. 2:12-cv-02026-MCE<br><br>**MEMORANDUM AND ORDER** |

Appellant Gregory Bos ("Bos") appeals the Bankruptcy Court's judgment in favor of Appellees Carpenters Trust Funds ("Appellees"). The Bankruptcy Court held that Bos's debt to Appellees, in the amount of $504,282.59, was nondischargeable under 11 U.S.C. § 523(a)(4), but not subsections (a)(2) or (a)(6). For the reasons set forth below, this Court affirms the Bankruptcy Court's decision.[1]

///

///

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230(g).

1

# BACKGROUND[2]

Bos owned and operated Bos Enterprises, Inc. ("BEI"), an office moving business. BEI was a member, and Bos was an officer, of the Modular Installers Association ("MIA"), an employer association. When Bos joined the MIA, he agreed to be bound by the Carpenters' Master Agreement ("CBA") and the Trust Agreements. (Appellee's Opening Br., Oct. 17, 2012, ECF No. 6 at 8.) The CBA and the Trust Agreements required Bos to remit monthly contributions to Appellees for the purpose of providing employee benefits. (Id. at 8-9.) A dispute arose over, among other things, Bos's failure to remit amounts to Appellees in accordance with the CBA and Trust Agreements.

On March 9, 2009, Bos signed a promissory note personally guaranteeing to Appellees $359,592.09, the amount then due and owing for unpaid benefit contributions since August 2008. (Pls.' Trial Ex. No. 43, EOR/Tab 11, 1279-81.) Bos, however, failed to comply with the payment plan detailed in the promissory note. (ECF No. 6 at 9.) Arbitration over Bos's default on the promissory note and subsequent unpaid contributions resulted in an award of $504,282.59 against Bos. (Id.)

On February 28, 2011, Bos and his spouse filed a joint Chapter 7 petition in the United States Bankruptcy Court for the Eastern District of California. On May 27, 2011, Appellees filed a complaint against Bos and his spouse to determine the dischargeability of the $504,282.59 debt pursuant to § 523(a)(2), (a)(4), and (a)(6).[3] On January 12, 2012, the Bankruptcy Court denied Bos's Motion for Summary Judgment. Trial first began on April 13, 2012, but Bankruptcy Court Judge David E. Russell continued the matter to allow the parties to conduct additional legal research and briefing.

///
///

---

[2] Unless otherwise specified, the factual assertions in this section are based on the allegations in Bos's Opening Brief. (See Appellant's Opening Br., Oct. 3, 2012, ECF No. 4 at 3-6.)

[3] On July 8, 2011, Appellees amended the complaint to dismiss Bos's spouse.

On June 14, 2012, after supplemental briefing and oral argument, the Bankruptcy Court found that the arbitrator's award was based on sums due from, but never paid by, Bos to Appellees under the CBA.  The Bankruptcy Court also found that by failing to make the payments, Bos committed defalcation while acting in a fiduciary capacity.  The Bankruptcy Court entered judgment that Bos's debt to Appellees, in the amount of $504,282.59, was nondischargeable under § 523(a)(4).

## STANDARD OF REVIEW

An appellant may petition the district court for review of a bankruptcy court's decision.  Fed. R. Bankr. P. 8013.  The applicable standard of review is identical to that which circuit courts of appeal apply when reviewing district court decisions.  See In re Baroff, 105 F.3d 439, 441 (9th Cir. 1997).  Accordingly, this Court reviews the Bankruptcy Court's findings of fact for clear error but reviews conclusions of law and mixed questions of law and fact de novo.  In re Hamada, 291 F.3d 645, 649 (9th Cir. 2002).  The question of whether a claim is nondischargeable presents mixed issues of law and fact and is reviewed de novo.  Id.  A de novo review is an independent review in which the reviewing court does not give any deference to the decision of the lower court.  Preblich v. Battley, 181 F.3d 1048, 1051 (9th Cir. 1999).

## ANALYSIS

Bos appeals a single issue:  Did the Bankruptcy Court err in determining that Bos's debt to Appellees was nondischargeable because Bos satisfied the fiduciary capacity requirement of § 524(a)(4)?

An individual debtor petitioning for bankruptcy does so to obtain a discharge of debts owed at the time of the filing.

///

For bankruptcy under Chapter 7, the discharge voids any judgment against the debtor to the extent that it is a determination of the personal liability of the debtor with respect to the debt; the discharge also bars any effort on the part of creditors to collect the debt. 11 U.S.C. § 524(a).  Though a discharge encompasses most pre-petition debts, there are several exceptions to the general discharge of such debts.  One exception provides that a discharge in a bankruptcy proceeding "does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity . . . ." 11 U.S.C. § 523(a)(4).

The Bankruptcy Court concluded that § 523(a)(4) bars Bos from discharging the $504,282.59 debt owed to Appellees.  Appellees urge this Court to affirm the Bankruptcy Court's decision.  Bos maintains that the debt is dischargeable and § 523(a)(4) is not applicable because the unpaid contributions were not plan assets to which he owed a fiduciary obligation.  On review, this Court analyzes de novo the applicability of § 523(a)(4).

### A. Binding Ninth Circuit Precedent Firmly Establishes that Fiduciary Status Under ERISA Satisfies the Fiduciary Capacity Requirement of 11 U.S.C. § 523(a)(4).

"Fiduciary relationships imposed by statute may cause the debtor to be considered a fiduciary under § 523(a)(4)." In re Hemmeter, 242 F.3d 1186, 1190 (9th Cir. 2001) (citations omitted).  The Ninth Circuit has held that "statutory ERISA fiduciaries qualify as fiduciaries under § 523(a)(4) . . . ."  Id. at 1190.  See also In re Glogower, 320 F. App'x 809, 811 (9th Cir. 2009) ("In In re Hemmeter . . . we held that a fiduciary under the Employee Retirement Income Security Act ("ERISA") is a fiduciary under § 523(a)(4)."); In re Fahey, 482 B.R. 678, 694 (B.A.P. 1st Cir. 2012) (citing In re Hemmeter for the proposition that "[t]he Ninth Circuit has held that ERISA plan fiduciaries are always fiduciaries for purposes of § 523(a)(4).").

///

///

4

However, Bos urges this Court to rule as the District Court for Northern District of California did in Carpenters Pension Trust Fund for Northern California v. Moxley, C 10-0756 RS, 2011 WL 1225572 (N.D. Cal. Mar. 31, 2011).  This Court refuses to do so for two reasons.  First, unlike the Ninth Circuit's decision in In re Hemmeter, Moxley is not controlling authority.  "A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."  Camreta v. Greene, 131 S. Ct. 2020, 2033 n.7 (2011) (citation omitted).  Second, Moxley is an anomaly in its deviation from established Ninth Circuit precedent, as the following excerpt demonstrates:  "[T]he Fund must demonstrate, not just that Moxley acted as a fiduciary according to the requirements of ERISA, but that he was a fiduciary within the specific meaning of [§] 523(a)(4)."  2011 WL 1225572, at *3.  Despite citing to the Ninth Circuit opinion, the court in Moxley did not apply or even acknowledge the central holding of In re Hemmeter that "statutory ERISA fiduciaries qualify as fiduciaries under § 523(a)(4)."  In re Hemmeter, 242 F.3d at 1190.  Accordingly, this Court will adhere to established Ninth Circuit precedent and decline Bos's invitation to adopt the analysis in Moxley.  Thus, if Bos is a fiduciary under ERISA, he is a fiduciary under § 523(a)(4).

**B.   Bos is a Fiduciary Under ERISA.**

ERISA confers fiduciary status on individuals who exercise "any authority or control respecting management or disposition of" the assets of an employee benefit plan.  29 U.S.C. § 1002(21)(A)(i).  Before analyzing "authority or control," the Court must determine whether Bos's unpaid contributions are assets of the Trusts Funds.

///
///
///
///

### 1. Under the Trust Agreements, Bos's Unpaid Contributions are Assets of the Trusts Funds.

The CBA and Trust Agreements, which Bos agreed to be bound by, required Bos to remit monthly contributions to Appellees for the purpose of providing employee benefits. Each of the Trust Agreements defines the respective Trust Fund as consisting of "all Contributions required by the Collective Bargaining Agreement or Subscriber's Agreement to be made for the establishment and maintenance of the [Fund]." (Pls.' Trial Ex. No. 3, EOR/Tab 11, 291 [Health & Welfare Fund], 303 [Pension Fund], 315 [Vacation and Holiday Fund], 329 [Training Fund], 341 [Annuity Fund].)

Bos argues that the contributions he failed to make are not assets of the Trust Funds. In support of his argument, Bos cites to Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223 (9th Cir. 2000). In Cline, the Ninth Circuit stated: "Until the employer pays the employer contributions over to the plan, the contributions do not become plan assets over which fiduciaries of the plan have a fiduciary obligation[.]" Id. at 1234 (citations omitted). However, "Cline merely stated the general rule regarding unpaid employer contributions" and did not address "a commonly applied exception when the plan document itself identifies unpaid employer contributions as a plan asset." Trs. of S. Cal. Pipe Trades Health and Welfare Trust Fund v. Temecula Mech., Inc., 438 F. Supp. 2d 1156, 1163 (C.D. Cal. 2006).

Bos urges this Court to disregard the plan document exception because the Ninth Circuit has not yet recognized it. (Appellant's Reply Br., Oct. 31, 2012, ECF No. 7 at 5.) Bos's argument fails to persuade this Court. While Bos is correct in asserting that "the Ninth Circuit [h]as [n]ever [r]ecognized" the exception, (id.), the Ninth Circuit also has never rejected it.[4]

///

---

[4] Temecula Mechanical explains the Ninth Circuit's failure to recognize the exception in Cline: "As the parties in Cline did not press for the exception, it is unremarkable that the Ninth Circuit failed to note or address it, leaving instead for it to apply the general rule to the issue before it." 438 F. Supp. 2d at 1165.

1  See Trs. of the Const. Indus. & Laborers Health & Welfare Trust v. Vasquez,
2  2:09-CV-02231-LRH, 2011 WL 4549228 (D. Nev. Sept. 29, 2011) ("the Ninth Circuit has
3  not addressed the issue").  Moreover, numerous courts within and outside of the Ninth
4  Circuit have recognized and applied the "commonly applied exception."[5]  This Court
5  therefore recognizes the exception and finds that it is applicable in the present case.[6]
6        Temecula Mechanical is instructive on application of the plan document
7  exception.  In Temecula Mechanical, trustees for employee benefit funds filed a
8  complaint against an employer over delinquent contributions and union dues.
9  438 F. Supp. 2d at 1159.  The trustees argued that the employer was a plan fiduciary;
10  the employer countered that "unpaid employer contributions are not plan assets, a
11  prerequisite for the existence of a fiduciary duty or a claim based on prohibited
12  transactions under ERISA."  Id. at 1161.  The court examined the trust agreements and
13  found that the "language in the Trust Agreements makes clear that the monies
14  composing the Fund include those that are 'due and owing' from 'Employers' . . . ."  Id.
15  Thus, "[g]iven that the parties themselves defined unpaid employer contributions as plan
16  assets under the terms of the Trust Agreements they negotiated, the Court will hold them
17  to the same."  Id. at 1167.
18  ///

---

[5] See, e.g., Vasquez, 2011 WL 4549228, at *4-5; Bd. of Trs. of Associated Gen. Contractors of Am., San Diego Chapter, Inc. Ret. Trust Fund v. Votolato, 07CV1283WQHNLS, 2008 WL 3925735 (S.D. Cal. Aug. 22, 2008); Cent. Ill. Carpenters Health & Welfare Trust Fund v. S & S Fashion Floors, Inc., 516 F. Supp. 2d 931, 936-37 (C.D. Ill. 2007) (collecting cases that "relied on specific language from plan documents, collective bargaining agreements, or other governing trust documents to override these general principles"); Bd. of Trs. of Laborers Health & Welfare Trust Fund for N. Cal. v. Atoll Topui Island, Inc., C 06-3059, 2007 WL 174409 (N.D. Cal. Jan. 22, 2007); Temecula Mechanical 438 F. Supp. 2d at 1163 (citing Trs. of Nat'l Elevator Indus. Pension v. Lutyk, 140 F. Supp. 2d 407, 410 (E.D. Pa. 2001), NYSA-ILA Med/ & Clinical Servs. Fund v. Catucci, 60 F. Supp. 2d 194, 200-01 (S.D.N.Y. 1999), Connors v. Paybra Mining Co., 807 F. Supp. 1242, 1246 (S.D. W.V. 1992), and Galgay v. Gangloff, 677 F.Supp. 295, 301 (M.D. Pa. 1987).

[6] According to Bos, recognition of the exception is "in violation of the rule that debt alleged to be non-dischargeable must arise from a breach of trust obligations imposed by law, separate and distinct from any breach of contract, and that the trust relationship must exist prior to and without reference to an act of wrongdoing."  (ECF No. 7 at 5.)  As with the reliance on Moxley, Bos overlooks controlling Ninth Circuit precedent that directly addresses and resolves this issue:  "ERISA imposes obligations on the fiduciary prior to the alleged wrongdoing.  Thus, ERISA satisfies the traditional requirements for a statutory fiduciary to qualify as a fiduciary under § 523(a)(4)."  In re Hemmeter, 242 F.3d at 1190 (citation omitted).

<u>Temecula Mechanical</u> is on point. Here Appellees, the trustees for employee benefit funds, filed a complaint against Bos over unpaid contributions. Appellees allege that Bos was a plan fiduciary; Bos counters that the unpaid employer contributions are not plan assets, a prerequisite for the existence of a fiduciary duty under ERISA. In <u>Temecula Mechanical</u>, the court found that the "language in the Trust Agreements ma[de] clear that the monies composing the Fund <u>include</u> those that are 'due and owing' from 'Employers' . . . ." <u>Id.</u> at 1165. Here too, review of the Trust Agreements makes clear that the monies composing the fund include "all Contributions required by the Collective Bargaining Agreement or Subscriber's Agreement to be made for the establishment and maintenance of the [Fund]." (EOR/Tab 11, 291, 303, 315, 329 and 341.)[7]

Examination of the Trust Agreements between Bos and Appellees leads this Court to the same conclusion of <u>Temecula Mechanical</u>:  Given that the parties themselves defined unpaid employer contributions as plan assets under the terms of the Trust Agreements they negotiated, the Court will hold them to the same. Thus, under the Trust Agreements, Bos's unpaid contributions to the Trust Funds are the assets of the Trust Funds.

### 2. Under ERISA, Bos is a Fiduciary with Respect to the Unpaid Contributions.

Having concluded that the unpaid contributions are assets of the Trust Funds, the Court must now determine whether Bos is a fiduciary under ERISA with respect to those unpaid contributions.

///

---

[7] There is no reason for this Court to distinguish between contributions that are "due and owing" and those that are "to be made." See Trs. of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for S. Nev. v. Granite Works, Inc., 2:10-CV-00767-HDM, 2011 WL 3159099, at *3 (D. Nev. July 26, 2011) ("Language deemed sufficient has included: (1) sums "due and owing"; (2) sums that "shall be paid" or are "required to be made"; or (3) sums that "become Trust assets on the Due Date.") (citations omitted).

Under ERISA, "a person is a fiduciary with respect to [an employee benefit] plan to the extent he exercises . . . any authority or control respecting management or disposition of its assets . . . ." 29 U.S.C. § 1002(21)(A)(i). The Ninth Circuit has observed that § 1002(21)(A) differentiates between "control over the cash" and "control over administration." IT Corp. v. Gen. Am. Life Ins. Co., 107 F.3d 1415, 1421 (9th Cir. 1997). As to the control over the cash, "[a]ny control over disposition of plan money makes the person who has the control a fiduciary[.]" Id. (internal quotation marks omitted). Thus, the "right to write checks on plan funds" is sufficient to confer fiduciary status under ERISA. Id.

In re Fahey is instructive on application of § 1002(21)(A)(i). 482 B.R. 678 (B.A.P. 1st Cir. 2012). In In re Fahey, an employer filed for bankruptcy, and the trustee of employee benefit plans filed a nondischargeability complaint over the employer's unpaid contributions to the plans. Id. at 682. The court first determined that, under the trust agreements, the delinquent contributions were assets of the trust funds.[8] Id. at 691. In its analysis of authority and control under § 1002(21)(A)(i), the court reasoned that the employer, "as the president and sole owner of a corporation whose debt to an ERISA plan was a plan asset, had assumed unfettered authority in all matters directly and indirectly related to . . . payment of contributions to the Funds." Id. at 692. Thus, the debtor's "dominant, pervasive role . . . establishes, at a minimum, that he exercised actual authority or control respecting management or disposition of the Funds' assets, sufficient to qualify as a fiduciary under 29 U.S.C. § 1002(21)(A)(i)." Id. at 693 (internal quotation marks omitted).[9]

---

[8] The trust agreements stated: "[A]ll contributions shall be considered and defined as plan assets including contributions that are properly due and owing but not yet paid to the Fund by Contributing Employers." In re Fahey, 482 B.R. at 682. Both the bankruptcy and appellate courts found that such language made the employer's delinquent contributions the assets of the trust funds. Id. at 691.

[9] Accord Temecula Mechanical, 438 F. Supp. 2d at 1169 ("In essence, the complaint provides that [the employer] had the primary (if not sole) responsibility in determining whether to pay contributions, when those payments were made, and if not what to do with those unpaid contributions. Such allegations are more than sufficient to demonstrate that [the employer] exercised authority or control over plan assets, and hence is a fiduciary for purposes of imposing personal liability under ERISA.") (citations omitted).

In re Fahey is on point. Here too, Bos, as the president and sole owner of a corporation whose debt to an ERISA plan was a plan asset, had assumed unfettered authority in all matters directly and indirectly related to payment of contributions to the Trust Funds. Bos testified at trial that, instead of paying contributions to Appellees, he made payments on company vehicles, electricity and water bills, employee wages, and his own salary. (Trial Tr., Apr. 13, 2012, EOR/Tab 4, 84:15-86:13.) As the Bankruptcy Court stated, Bos "alone had the authority to determine whether those contributions would be paid. He had authority over those contributions." (Id. at 118:17-20.) Bos's dominant and pervasive role establishes, at a minimum, that he exercised actual authority or control respecting management or disposition of plan assets, sufficient to qualify as a fiduciary under ERISA.

### C. Bos Defalcated While Acting in a Fiduciary Capacity.

A debt is nondischargeable under § 523(a)(4) only if the debtor, while acting in a fiduciary capacity, commits a fraud or defalcation. 11 U.S.C. § 523(a)(4). "[T]he essence of defalcation in the context of § 523(a)(4) is a failure to produce funds . . . ." In re Hemmeter, 242 F.3d at 1191 (citation omitted). "An individual may be liable for defalcation without having the intent to defraud." In re Lewis, 97 F.3d 1182, 1187 (9th Cir. 1996). In In re Glogower, the Ninth Circuit found that an ERISA fiduciary committed defalcation by paying himself despite being "fully aware that the entities . . . he controlled could not pay the claims due the plan beneficiaries." In re Glogower, 320 F. App'x 809, 812 (9th Cir. 2009) (internal quotation marks omitted).

Here, Bos committed the essence of defalcation in the context of § 523(a)(4) when he failed to produce the contributions in accordance with the CBA and Trust Agreements. While he may not have had the intent to defraud, such intent is not required for defalcation under § 523(a)(4).

///

As in In re Gloglower, Bos committed defalcation by paying himself and other obligations despite being fully aware that the entities he controlled could not pay the contributions due to the Trust Funds.  (See EOR/Tab 4, 87:24-88:2.)

Thus, this Court's de novo review demonstrates the Bankruptcy Court did not err in determining that:  (1) fiduciary status under ERISA satisfies the fiduciary capacity requirement of § 523(a)(4); (2) under the Trust Agreements, Bos's unpaid contributions are assets of the Trust Funds; (3) under ERISA, Bos is a fiduciary with respect to the unpaid contributions; (4) Bos defalcated while acting in a fiduciary capacity; and (5) Bos's debt of $504,282.59 is nondischargeable.[10]

## CONCLUSION

Based on all of the foregoing, the decision of the Bankruptcy Court is hereby AFFIRMED.

IT IS SO ORDERED.

Dated:  March 8, 2013

_____
MORRISON C. ENGLAND, JR, CHIEF JUDGE
UNITED STATES DISTRICT JUDGE

---

[10] The Court has reviewed Appellees' Cross-Appeal of the Bankruptcy Court's ruling on § 523(a)(2) and (a)(6) (Case Number 2:12-CV-02079-MCE).  Because Appellees secure their requested relief under § 523(a)(4), this Court summarily affirms the Bankruptcy Court's decision with respect to § 523(a)(2) and (a)(6) in full.

11